# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| RUMPA BANERJEE | : | CIVIL ACTION |
|---|---|---|
| v. | : | NO. 18-2571 |
| PHILADELPHIA CHOP | : | |

**KEARNEY, J.** June 21, 2018

## MEMORANDUM

New Jersey citizen Rumpa Banerjee filed a *pro se* complaint asking us to order Children's Hospital of Philadelphia ("CHOP") to release her teenage son A.C. being treated for serious injuries while her lawyers are simultaneously litigating these state law issues in the Pennsylvania appellate courts. It is impossible to not understand Ms. Banerjee's need to protect her son in every possible forum. But a federal district court cannot stop or interfere with ongoing state court proceedings based on Pennsylvania state law claims. We are not an appellate court to review an orphans' court order allowing a hospital to stop life support systems especially when Ms. Banerjee's lawyers are challenging these issues in the Pennsylvania appellate courts. While Ms. Banerjee may proceed *in forma pauperis* based on her sworn statement and she arguably pleads diversity subject matter jurisdiction, we must dismiss her *pro se* complaint for failing to state a claim under long-established principles of comity.

**I.     Facts in the *pro se* complaint and noticed from the Pennsylvania court dockets.**

CHOP admitted A.C. on April 15, 2018. CHOP declared him "brain dead" on April 26, 2018. Since then, his mother Rumpa Banerjee has been trying to transfer A.C. to a New Jersey

facility. CHOP's records confirm, at least as of mid-May 2018, she had not persuaded one of her preferred New Jersey facilities to accept A.C. as a patient.

At some point after April 15, 2018, Ms. Banerjee and her lawyer sought an injunction to ensure continuing life sustaining treatment in the Orphans' Court division of the Philadelphia Court of Common Pleas. As this matter is sealed in Orphans' Court, we are unable to find out more information concerning Ms. Banerjee's efforts in the Pennsylvania trial courts.[1]

We have access to Pennsylvania appellate court dockets. On May 24, 2018, the Orphans' Court in Philadelphia dissolved a special injunction which had restrained CHOP from removing life sustaining measures for Ms. Banerjee's son. Ms. Banerjee immediately appealed through counsel and the Pennsylvania Superior Court stayed CHOP from proceeding with ending life sustaining measures. The Pennsylvania Superior Court ordered Ms. Banerjee to notify it, on or before June 1, 2018, as to possible arrangements to transfer her son to another medical facility. On June 4, 2018, the Pennsylvania Superior Court remanded the matter to the Orphans' Court to determine if the stay should be extended for the limited purpose of Ms. Banerjee securing an alternate placement for her son. On June 14, 2018, the Orphans' Court issued a ruling not provided to us – and not available on public dockets as a sealed matter. On June 18, 2018, the Pennsylvania Superior Court denied Ms. Banerjee's petition for stay and directed its June 4, 2018 stay would expire at 5:00 P.M. on June 20, 2018. Ms. Banerjee, through counsel, filed an emergency application with the Pennsylvania Supreme Court. Late on June 19, 2018, the Pennsylvania Supreme Court stayed the Superior Court's June 18, 2018 Order and essentially imposed a stay until further order of the Pennsylvania Supreme Court.

On June 19, 2018, while her counsel filed papers with the Pennsylvania Supreme Court, Ms. Banerjee *pro se* sued CHOP in the District of New Jersey. After a hearing, the district court

2

dismissed Ms. Banerjee's complaint noting Ms. Banerjee may file in this District. A short time later, Ms. Banerjee *pro se* sued CHOP in this District detailing the facts "[m]y child life support system is about to be pulled off. He is a New Jersey Resident and He is kept as hostage and trying to pull off the life support system"[2] [sic] and seeking an order to "[t]ake my child out of CHOP... Hospital that refused transfer can take him [listing four hospitals]."[3] In her "arbitration certification" form attached to her *pro se* complaint, Ms. Banerjee writes "Relief other than monetary damages is sought from taking off his life support system and stick to the other date of July 24th" [sic].[4] We read her present request for relief as seeking a transfer of her son from CHOP to alternative placement – similar to the relief discussed with the Orphans' Court – or to do so by July 24, 2018. We are not aware of whether Ms. Banerjee served CHOP with process.

## II. Analysis

### A. We grant Ms. Banerjee leave to proceed *in forma pauperis*.

We grant Ms. Banerjee leave to proceed *in forma pauperis* because she swears she is not able to pay the fees necessary to commence this action. We are aware she has counsel in the Pennsylvania appellate courts but have no reason to dispute her sworn statement.

### B. We dismiss Ms. Banerjee's action because does not plead a claim.

Congress, in 28 U.S.C. § 1915(e)(2)(B)(ii), requires we dismiss the Complaint for which we have granted *in forma pauperis* status if the plaintiff obtaining the benefit of waived filing fees fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6),[5] which requires we determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[6]

3

Conclusory statements and naked assertions will not suffice.[7] As Ms. Banerjee is proceeding *pro se*, we construe her allegations liberally.[8]

Ms. Banerjee does not identify a legal claim. She seeks relief which is arguably before the Pennsylvania Supreme Court. She does not plead either a federal or state law claim. Ms. Banerjee does not plead a federal question. We have no basis to find CHOP is a state actor for possible civil rights claims under the First or Fourteenth Amendments.[9] We have no basis to otherwise invoke federal question jurisdiction.

We arguably may enjoy subject matter jurisdiction in this controversy between a New Jersey and Pennsylvania citizen. But Ms. Banerjee does not plead an amount in controversy. Absent some pleading of an amount in controversy, we cannot assume subject matter jurisdiction.

Even assuming we liberally construe her *pro se* complaint as involving more than $75,000 in controversy based on the costs of transferring Ms. Banerjee's son to another hospital, we cannot interfere with an ongoing state court appellate matter on the placement and care of her son. We recognize we must exercise jurisdiction over cases properly within the scope of our jurisdiction.[10] However, we abstain from "federal adjudication [where it may] . . . unduly interfere with ongoing state proceedings such that abstention is necessary to 'accord[] appropriate deference to the 'respective competence of the state and federal court systems.'"[11]

Under *Younger v. Harris*,[12] more fully explained recently by the Supreme Court in *Sprint Communications, Inc. v. Jacobs*, we are required to abstain in three "exceptional" circumstances: "state criminal prosecutions"; "civil enforcement proceedings"; and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."[13] The "notion of comity" between federal and state courts underlies the *Younger*

4

doctrine; "that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."[14]

This case falls within the third category of exceptional cases identified in *Sprint*. We are reviewing facts also at issue in an ongoing state court proceeding involving Ms. Banerjee's dispute with CHOP regarding whether, and when, it will suspend life support measures for her son. Although we find no factually similar cases in his Circuit, courts in this District apply the third *Sprint* category to child custody proceedings.[15] Our interference in this ongoing matter, now before the Pennsylvania Supreme Court staying CHOP's removal of life support, would interfere with the Pennsylvania courts' "ability to perform their judicial functions" over the state law issues.

Having found this matter fits within the third category of "exceptional" cases, we examine the three requirements to apply the *Younger* doctrine: "(1) ongoing state proceedings that are judicial, (2) the proceedings implicate important state interests, and (3) the proceedings afford an adequate opportunity to raise the federal claims."[16] As noted, there are ongoing state proceedings in the Pennsylvania Supreme Court. The proceedings implicate important state interests in family relations and the health of children. For example, in custody matters, the Supreme Court recognizes "[f]amily relations are a traditional area of state concern."[17] Although we do not know the issues raised in the Orphans' Court action, it is likely issues such as Pennsylvania's definition of "brain dead" and parties' position on the removal of life support measures were, and are, at issue implicating important state interests. To the extent Ms. Banerjee has a federal claim (and as noted above we see none plead in her complaint), there is an

5

adequate opportunity to address them in the state court proceedings. The requirements of *Younger* abstention are met, and we will abstain.

### III. Conclusion

We grant Ms. Banerjee leave to proceed *in forma pauperis* and will dismiss his Complaint for failing to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[1] The Orphans' Court denied our requests for copies of dockets or pleadings citing a seal order.

[2] ECF Doc. No. 2.

[3] *Id.*

[4] *Id.*

[5] *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

[7] *Id.*

[8] *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

[9] In her "Motion," Ms. Banerjee "requests to be respected my religious faith [sic]" possibly suggesting a First Amendment claim. ECF Doc. No. 3. Although not without limit, the "Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Doe ex. Rel. Doe v. Governor of New Jersey*, 783 F.3d 150, 156 (3d Cir. 2015) (quoting *Troxel v. Granville*, 530 U.S. 57, 66 (2000)). Both claims require a state actor.

[10] *Gonzalez v. Waterfront Comm'n of New York Harbor*, 755 F.3d 176, 179-180 (3d Cir. 2014) (citations omitted).

[11] *Id.* at 180 (quoting *England v. Louisiana State Bd. of Med. Examiners*, 375 U.S. 411, 415 (1964)).

[12] *Younger v. Harris*, 401 U.S. 37 (1971).

[13] *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367-368 (1989)).

[14] *Younger*, 401 U.S. at 44.

[15] *See Mikhail v. Kahn*, 991 F.Supp. 2d 596, 627 (E.D. Pa. 2014); *Reiss v. Commonwealth of Pa.*, No. 17-3294, 2017 WL 3276524, at *3-*4 (E.D. Pa. Aug. 2, 2017); *Karl v. Cifuentes*, No. 15-2542, 2015 WL 4940613, at *4 (E.D. Pa. Aug. 13, 2015). A California district court abstained from a case brought by a child, declared by a California hospital as "brain dead," and her mother seeking an injunction in federal court against the hospital from, among things, removing life support systems, while also maintaining state court proceedings arising from the same facts. *McMath v. California*, No. 15-6042, 2016 WL 7188019 (N.D. Cal. Dec. 12, 2016). Reviewing the various federal abstention doctrines, the California district court applied *Pullman* abstention; an abstention doctrine allowing "federal courts to refrain from deciding sensitive federal constitutional questions when state law issues may moot or narrow the constitutional question." *McMath* at *5-*6 (quoting *Porter v. Jones*, 319 F.3d 483, 492 (9th Cir. 2003)).

[16] *Gonzalez*, 755 F.3d at 182-183 (citing *Sprint*, 571 U.S. at 81) (referring to the *Middlesex* factors for *Younger* abstention in *Middlesex Cnty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)).

[17] *Lazaridis v. Wehmer*, 591 F.3d 666, 671 n.5 (3d Cir. 2010) (quoting *Moore v. Sims*, 442 U.S. 415, 425 (1979)).